**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

DEC 1 1 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**NELSON E. SMITH,**

    **Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CRIMINAL ACTION NO. 2:16-CR-51**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Nelson E. Smith's ("Petitioner") Second Amended Motion for Early Termination of Supervised Release ("Motion"). Second Am. Mot., ECF No. 9 ("Pet'r's Mot."). The Court has reviewed all relevant filings and the matter is now ripe for judicial determination. For the reasons stated herein, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 17, 2007, Petitioner was charged in the Northern District of West Virginia in a thirteen-count Indictment with Attempted Transfer of Obscenity to a Minor, in violation of 18 U.S.C. § 1470 (Counts One, Eleven, and Twelve); Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1) (Counts Two through Ten); and Attempted Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) (Count Thirteen). Petitioner was placed on bond pending trial. On December 11, 2007, Petitioner pled guilty to Count Four, Transportation of Child Pornography. J., ECF No. 1-2; Docket Sheet, ECF No. 1-3 at 5 (containing docket sheet for Case No. 3:07-cr-59 (N.D. W.Va.)).

1

According to the Presentence Investigation Report filed in the Northern District of West Virginia, in February 2006, an undercover officer in the Hampshire County Sheriff's Office created a fictitious user profile on MySpace.com to investigate internet-related child exploitation activities.[1] Present. Investig. Rep. ¶ 25, Case No. 3:07-cr-59 (N.D. W.Va.), ECF No. 40 ("PSR").[2] The officer established an online undercover persona as a 14-year-old girl from Romney, West Virginia named "Melissa." *Id.* On August 26, 2006, Petitioner sent an instant message to Melissa's MySpace account and asked to be added to her friends list. *Id.* ¶ 26. Within days, Petitioner invited Melissa to visit him to go to the beach and began using terms of endearment, such as "pretty princess." *Id.* Between August 26, 2006, and March 7, 2007, Petitioner conversed with Melissa on approximately 28 occasions. *Id.*

On October 22, 2006, Melissa engaged in an instant message conversation with Petitioner via Yahoo! Messenger. *Id.* ¶ 27. There was discussion about a possible meeting and a sexual encounter during that meeting. *Id.* Petitioner made sexually suggestive and explicit comments to Melissa about having sex with her. *Id.* No certain date to meet was established due to Petitioner's hectic schedule. *Id.*

On November 10, 2022, Petitioner sent Melissa an e-mail message with an attachment containing nine pictures of himself naked in various sexually explicit poses and gestures. *Id.* ¶ 28. Petitioner also sent two other emails containing a total of seven images of child pornography featuring prepubescent females engaged in actual or simulated sexual conduct with adult males. *Id.* Some images had corresponding captions describing the content, such as "14 yo with dad." *Id.*

---

[1] "MySpace.com is a free service that utilizes the Internet and online communication for social networking." PSR ¶ 25.
[2] The parties stipulated basic facts establishing the offense in paragraph 20 of the PSR. Otherwise, these facts are drawn from the Government's submitted version of the offense stated in the PSR. *See* PSR ¶¶ 24–37.

On December 17, 2006, Petitioner and Melissa had a conversation on Yahoo! Messenger. *Id.* ¶ 29. Petitioner referenced the nude pictures he previously e-mailed and then sent multiple image attachments containing child pornography. *Id.* Petitioner asked Melissa to imagine herself "doing it" with Petitioner when she was "6 or 7" years old. *Id.* Each time Petitioner sent images in the chat, he generally described the images he was about to send, including the estimated age of the minors depicted. *Id.* Petitioner said he wanted to take pictures of Melissa in various sex acts and sent her additional images ostensibly to give examples of different sexual poses and positions. *Id.* Petitioner indicated his awareness that it is a "federal offense to have nude pics of kids under 18 on computer or to send them out," and he cautioned Melissa to be careful. *Id.* Petitioner asked Melissa when she was going to have a birthday, and Melissa responded she would be 15 on January 22, 2007. *Id.* In total during this conversation, Petitioner sent 27 unsolicited child pornographic pictures in seven different attachments, four obscene pictures, and one pornographic video to Melissa. *Id.*

Between December 18, 2006, and May 1, 2000, Petitioner and Melissa exchanged short, perfunctory MySpace messages, such as Christmas or birthday greetings and asking how one another was doing. *Id.* ¶ 31. Petitioner did not send additional pictures but continued to talk about a possible meeting. *Id.* No definite dates or times were determined due to Petitioner's schedule conflicts. *Id.*

On May 1, 2007, Virginia FBI agents working in conjunction with agents from the Northern District of West Virginia served a search warrant on Petitioner's residence. *Id.* ¶ 32. Upon interviewing Petitioner, he admitted to going into online chat rooms and receiving child pornographic pictures from other chat room users. *Id.* He admitted to downloading and saving some of these pictures, which depicted girls and some boys as young as 12, and that there would

be images of child pornography on his computer. *Id.* He admitted the images depicted children engaged in sexual activity or posed nude. *Id.* Petitioner also acknowledged engaging in sometimes "hot and heavy" online chats with girls he believed were 13 to 15 years old and discussing possible meetings, but he explained it was all "heat of the moment" "fantasy and talk." *Id.* ¶ 33. Petitioner admitted to sending child pornography and naked pictures of himself to a 14- or 15-year-old girl named Melissa who lived in West Virginia. *Id.* Petitioner told agents he had a sexual preference for pornographic pictures of girls aged 13 to 18. *Id.*

During interviews conducted with Petitioner and his estranged wife, agents learned that in 2005, Perverted Justice, a non-profit organization dedicated to exposing individuals who attempt to solicit minors online, threatened to expose Petitioner as a pedophile if he did not enter counseling for his problem. *Id.* ¶ 34. Petitioner entered counseling but stopped going once he thought his problem was under control. *Id.* Perverted Justice had saved logs of a chat between their trained undercover volunteer and Petitioner, which occurred in July and August of 2005. *Id.* The chat involved Petitioner and a person whom he believed to be a 13-year-old Virginia girl named "Beth." *Id.* The chat with "Beth" was very similar in content, pattern, and tone to the chat with Melissa. *Id.* After finding that he had been posted on Perverted Justice's website, Petitioner sent an e-mail letter of apology expressing remorse and promising never to engage in that sort of behavior again. *Id.* The matter was referred to Virginia law enforcement agencies, but no investigation or prosecution was ever initiated. *Id.*

The officer posing as Melissa sent the child pornographic images received from Petitioner to the National Center for Missing and Exploited Children ("NCMEC") for analysis and comparison. *Id.* ¶ 35. NCMEC's analysis resulted in "hits" on six known images of child pornography from five different series. *Id.* The FBI reported that forensic analysis of the computer

4

found in Petitioner's bedroom revealed approximately 100 images appearing to constitute child pornography, including originals of the images he sent to Melissa. *Id.* ¶ 36. At the time the PSR was published, the Government was not aware of any evidence indicating that Petitioner actually met with a minor for sexual purposes, that he has ever molested a minor, or that he was personally involved in or connected with the production of the child pornography. *Id.* ¶ 37.

Petitioner was arrested on July 25, 2007, and released on August 3, 2007, on a $100,000 personal recognizance bond with conditions of pretrial release and electronic monitoring. *Id.* at 1. On April 2, 2008, the Northern District of West Virginia sentenced Petitioner to 108 months in prison followed by a lifetime term of supervised release. J. Petitioner completed his period of incarceration and began his term of supervised release in March 2016. On April 5, 2016, jurisdiction transferred to the Eastern District of Virginia. Order Transferring Jurisd., ECF No. 1.

Petitioner filed a Motion for Early Termination of Supervised Release on August 9, 2023, and later amended twice, filing the instant Motion on September 28, 2023. ECF Nos. 3, 4, 9. The Government responded in opposition to the Motion on October 13, 2023. Resp. Opp'n, ECF No. 11. Petitioner did not reply to the Government's response.

## II.   LEGAL STANDARD

Title 18 U.S.C. § 3583 provides a court with the authority, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor," to "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment" if not already required by statute. 18 U.S.C. § 3583(a). The purpose of supervised release is "to assist individuals in their transition to community life" and to "fulfill[] rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).

Under § 3583(e)(1), a court may terminate a term of supervised release after the defendant

has served one year of supervised release and, after considering certain factors listed in 18 U.S.C. § 3553(a), "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." § 3583(e)(1) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), (a)(5)–(7)); *see United States v. Taylor*, No. 3:08-cr-47, 2011 WL 1167212, at *2 (E.D. Va. Mar. 24, 2011). "The phrase 'the interest of justice' does give the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period." *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999). "Termination 'ends the term of supervised release without the possibility of its reimposition or continuation at a later time." *United States v. Harris*, 878 F.3d 111, 115 (4th Cir. 2017) (quoting *Johnson v. United States*, 529 U.S. 694, 704 (2000)). "Thus, if the district court later discovered that the defendant had earlier violated some condition of his supervised release, the court would lack authority to send him back to prison for that violation *qua* violation." *Id.* (quoting *United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017)).

### III.   DISCUSSION

Petitioner requests early termination of his lifetime term of supervised release. Petitioner argues that his performance on supervised release has been "exemplary and exceptional," and that he is no longer in need of supervision. Pet'r's Mot. at 6–7. Petitioner claims he has remained in contact with his Probation Officers and fully complied with all requirements of supervised release, including by completing all required psychosexual treatment programs and submitting to annual polygraph examinations. *Id.* at 1, 6. He claims he has never failed any of those polygraph tests, never failed to register as a sex offender as required, and that he "has developed healthy coping skills and presents a low risk of recidivism." *Id.* at 4, 6.[3] Petitioner also claims he "displayed

---

[3] Petitioner understands the sex offender registration requirement would remain if supervised release were terminated. *Id.* at 4.

initiative and leadership qualities in completing the required tasks and assignments for group therapy" and "assisted other therapy and counseling group members." *Id.* at 7. Petitioner says his counselors "praised [him] for his dedication and selflessness." *Id.*

Petitioner intends to move to Martinsville, Virginia and take care of his older brother, age 74, who has an autism spectrum disorder and is unable to care for himself. *Id.* at 3. Petitioner also claims that he recently lost his apartment in the Hampton Roads region of Virginia due to redevelopment and will not be able to afford rent in that building once renovations are complete, further prompting him to permanently relocate to Martinsville. *Id.* at 3. Petitioner claims he has been financially responsible by living within his means on a fixed income, and he plans to provide housing for himself and his brother in Martinsville. *Id.* at 3–4. Petitioner argues that a temporary ninety-day transfer of jurisdiction to the Western District of Virginia is "unfeasible because [he] would not be able to obtain housing for such a short period of time." *Id.* at 4. Petitioner also states that permanent transfer of supervision to the Western District of Virginia "may not be desirable" because the Probation Office "will likely" either (1) have Petitioner restart the rehabilitation program that he has already completed after seven years of supervision in the Eastern District of Virginia or (2) determine that Petitioner is no longer in need of the services or supervision that Probation can provide, as he argues the Probation Office in this District has already done. *Id.* at 4 n.2. The Probation Office has not submitted a recommendation regarding termination of Petitioner's supervised release term.

The Government opposes termination of Petitioner's supervised release, arguing that the § 3553(a) factors and the interests of justice weigh against termination. The Government contends that Petitioner's conduct alone does not warrant termination even though he has successfully completed various treatment programs and complied with other conditions of release. Resp. Opp'n

7

at 2–3. The Government asserts that Petitioner's conduct prior to arrest "demonstrated that counseling is insufficient to keep him from attempting to harm children." *Id.* at 7 (citing PSR ¶ 34). Further, the Government claims that "[r]ecidivism rates for sex offenders do not appreciably decline as offenders age." *Id.* at 7 (citing H.R. Rep. 107-527, 2002 WL 1376222 (June 24, 2002)).

The Government avers that Petitioner has no evidence to support his claim that he displayed initiative and leadership by helping others in therapy. *Id.* The Government claims that Petitioner's counsel failed to provide such evidence upon request because the relevant treatment facility is closed, but it argues that Petitioner's counsel should still have been able to obtain documentary evidence or a supporting declaration attesting to his initiative or leadership. *Id.* The Government also minimizes Petitioner's financial responsibility as irrelevant or non-exceptional conduct. *Id.* at 6. The Government argues that transfer of supervised release to the Western District of Virginia is common and would accomplish Petitioner's objective of moving to Martinsville to care for his brother. *Id.* at 7–8 (citing *United States v. White*, No. 06-CR-50, 2012 WL 5198364, at *4 (E.D. Wisc. Oct. 19, 2012)).

Upon considering the § 3553(a) factors, Petitioner's conduct, and the interests of justice, the Court finds that termination of Petitioner's supervised release term is not warranted. The Court begins its analysis of the § 3553(a) factors by looking to Petitioner's history and characteristics. Petitioner is seventy-two (72) years old and lives in the Hampton Roads region of Virginia within the Eastern District of Virginia. Petitioner was born and raised in Martinsville, Virginia. PSR at 1; Pet'r's Mot. at 3. Petitioner graduated Martinsville High School in June 1969. PSR ¶ 87. Petitioner joined the United States Navy in April 1970 at age 19 and served in the United States Navy Reserve until August 1978 when he was honorably discharged. *Id.* ¶ 94; Pet'r's Mot at 2. Petitioner then served in the United States Army Reserve from August 1978 to May 1994. PSR ¶ 94.; Pet'r's Mot.

at 2. As a civilian, Petitioner worked in supply and procurement at the United States Naval Base and Air Station in Norfolk, Virginia. Petitioner retired from work on the Naval Base on April 30, 2004, but later held various warehouse jobs in 2005 and 2006. Pet'r's Mot. at 2; PSR ¶¶ 89–93. Petitioner reported taking some community college classes, but never completed any course of study. *Id.* ¶ 87. While in Prison, Petitioner worked for UNICOR Industries furniture factory for approximately 6 years and 9 months, achieving Senior Grade 1 status during the last two years of his work. Pet'r's Mot. at 4. Petitioner currently lives on a fixed income and relies on his military pension, civil service pension, and some social security benefits. *Id.* at 3.

Petitioner has been married twice. Petitioner first married in 1971 and had one daughter with his first wife before divorcing in 1978. PSR ¶ 80. Petitioner married his second wife in 1987 and had two sons with her. *Id.* ¶ 81. Petitioner has been separated from his second wife for about twenty-two (22) years, but the two keep in touch and she supports him. Pet'r's Mot. at 2–3. Petitioner has three adult children: a 50-year-old daughter who lives with her family in South Mills, South Carolina; a 31-year-old son who lives in Portsmouth, Virginia; and a 30-year-old son who lives in Suffolk, Virginia. *Id.* Petitioner has two grandchildren and one great grandchild. *Id.* at 3.

Petitioner is the youngest of three brothers. PSR ¶ 77. His oldest brother, Melvin, and his second-oldest brother, Kenneth, lived together in Martinsville, Virginia until Melvin passed away at the age of 76 in December 2021. Pet'r's Mot. at 3. Kenneth, age 74, is disabled, suffers from an autism spectrum disorder, and is unable to live by himself. *Id.* Melvin took care of Kenneth until he passed. *Id.* Kenneth has a part time job doing chores at a local church. *Id.* Although the Smith family established a trust to financially support Kenneth, Petitioner claims the trust funds are insufficient to place Kenneth in a long-term assisted living facility. *Id.* As explained above, Petitioner intends to move in with Kenneth to take care of him.

Petitioner has suffered several health issues throughout his life, including a June 7, 2022, hospitalization to repair an aneurysm of the left popliteal artery, which also required physical therapy. Pet'r's Mot. at 4; PSR ¶ 84. In the PSR, Petitioner reported that at the age of 12 or 13, he was sexually abused by an adult male, and reported no other forms of abuse. PSR ¶ 78. Petitioner reported he was undergoing counseling in Norfolk, Virginia. *Id.* ¶ 85. Petitioner had attended sessions every two weeks since September 2007. *Id.*

The nature and circumstances of Petitioner's offense are undoubtedly serious. Petitioner repeatedly communicated with Melissa about engaging in sexually explicit conduct with her and potentially meeting in person. Petitioner shared several child pornographic images with Melissa as examples of the acts he wanted her to perform, as well as explicit photographs of himself and a pornographic video. Petitioner knew Melissa represented herself to be a 14- or 15-year-old girl the entire time he engaged with her. Further, Petitioner possessed approximately 100 child pornographic images on his computer and admitted to engaging in similar online chats with minors. Petitioner had already been confronted and exposed by Perverted Justice for a similarly explicit chat with an undercover volunteer posing as a minor before engaging with Melissa, even though he apologized and promised not to engage in such behavior again. Petitioner ultimately pled guilty to Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1), a class C felony. 18 U.S.C. § 3559(a)(3).

"A lifetime term of supervised release is authorized by [§ 3583] and within the Sentencing Guidelines range." *See United States v. Helton*, 782 F.3d 148, 154 (4th Cir. 2015); *see* 18 U.S.C. § 3583(k) (authorizing a term of supervised release for offenses under 18 U.S.C. § 2252A of "any term of years not less than 5, or life"); U.S.S.G. § 5D1.2(b)(2) ("[T]he length of the term of supervised release . . . may be up to life, if the offense is . . . a sex offense."). Legislative history

10

indicates that the "life term of supervised release was in response to the 'long-standing concerns of Federal judges and prosecutors for the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.'" *United States v. Allison*, 447 F.3d 402, 406 (5th Cir. 2006) (quoting H.R. Rep. No. 108–66, at 49–20 (2003) (conf. rep.), *reprinted in* 2003 U.S.C.C.A.N. 683, 684). "Furthermore, the U.S. Sentencing Commission specifically included an advisory policy statement in the Guidelines Manual that suggests it is the judgment of the Sentencing Commission that in the case of sex offenses 'the statutory maximum term of supervised release is recommended.'" *Helton*, 782 F.3d at 154 (quoting U.S.S.G. § 5D1.2(b)(2)(Policy Statement)).

According to the PSR, Petitioner's Total Offense Level is 31 and his Criminal History Category is I. PSR ¶¶ 69, 72. Petitioner faced a statutory minimum term of imprisonment of five years and a maximum term of 20 years, pursuant to 18 U.S.C.§ 2252A(a)(1), as well as a term of supervised release of at least 5 years to a maximum of life, pursuant to 18 U.S.C. § 3583(k). *Id.* ¶¶ 98, 101. Petitioner's Guideline Range at sentencing was 108 to 135 months of imprisonment followed by five years to life on supervised release. *Id.* ¶¶ 99, 102; U.S.S.G. §§ 5A, 5D1.2(b)(2) (2007).

The District Court for the Northern District of West Virginia sentenced Petitioner to 108 months in prison followed by a lifetime term of supervised release. J. at 2–3. The court imposed various conditions on Petitioner's term of supervised release, including requirements to register with the state sex offender registration agency in the state where he resides or works, cooperate with the collection of his DNA, refrain from associating with or living in a residence with minors under 18 without approval of the Probation Officer, and refrain from entering places where minor

children may congregate or establishments where pornography or erotica are available. *Id.* at 3–4. Petitioner also may not possess or use a computer or device to access an online service without the Probation Office's approval, must consent to the Probation Officer conducting periodic unannounced examinations of his computer equipment, and must submit to other physical searches conducted by a Probation Officer without a warrant and upon reasonable suspicion. *Id.* at 4. Further, the court required Petitioner to participate in a mental health treatment program until released from the program by the Probation Officer and to participate in a sex offender treatment program. *Id.*

The serious nature of Petitioner's offense and pre-sentencing conduct, the strong need for specific and general deterrence, and the need to protect the public all weigh heavily against termination. Petitioner's acts and conviction demand a sentence that strongly deters him and others from similar conduct. The restrictions on Petitioner's computer use and presence around minors are especially important to deter him from recidivating and to protect minor children, especially considering Petitioner used online social media, chat rooms, and e-mail messages to send and receive child pornography and to discuss physically meeting Melissa to engage in sexual acts.

The Court recognizes that Petitioner is 72 years old and has a support network of family members in both Martinsville and the Hampton Roads region, and therefore may be less likely to recidivate than other sex offenders. It is also debatable whether recidivism rates for sex offenders "do not appreciably decline as offenders age," as the Government argues. Resp. Opp'n at 7; *see United States v. Fowler*, 948 F.3d 663, 670 (4th Cir. 2020) (discussing studies demonstrating that "the risk of recidivism is inversely related to an inmate's age," including for sex offenders (quoting *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014)). Yet Petitioner is no longer in prison, and supervised release offers a mechanism to deter recidivism and provide rehabilitation without

imposing punishment that is greater than necessary. *Cf. Fowler*, 948 F.3d at 670–71 (holding 40-year prison term reasonable where defendant would be released near the age of 60 and district court considered the need for rehabilitation and the lower likelihood of recidivism at that age). Considering Petitioner's possession and repeated transmission of sexually explicit and child pornographic material over the internet to minor girls, his continued efforts to engage with minors regarding sexually explicit conduct after being confronted by Perverted Justice, and the greater level of freedom supervised release provides in comparison to prison, the Court finds it appropriate to maintain Petitioner's lifetime supervised release term. *See* PSR ¶¶ 26–36.

The Court commends Petitioner for successfully completing his assigned mental health and sex offender treatment programs and applying them to his daily life. Yet compliance with the terms of supervised release is not itself sufficient to warrant termination. "[E]ven model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *United States v. Ryals*, 2:10-cr-202, slip op. at 2 (E.D. Va. Jan. 6, 2022) (quoting *Folks v. United States*, 733 F. Supp. 2d, 649, 652 (M.D.N.C. 2010)); *see also United States v. Freeman*, 05-60224-CR-LENARD, 2023 WL 7036343, at *6 (S.D. Fla. Oct. 26, 2023) ("Full compliance, after all, is merely what is expected of all people serving terms of supervised release." (citation omitted)). Petitioner's positive conduct does not outweigh the need to protect the public—especially minors—by deterring him and others from trafficking child pornography and committing similar crimes. *See McMinn v. United States*, No. 2:16-cr-140, 2022 WL 1633622, at *5 (E.D. Va. May 23, 2022) (finding it inappropriate to reduce or terminate 20-year term of supervised release after 3.5 years of supervision for § 2252A violation, even though the petitioner completed mental health, substance abuse, and sex and pornography addiction programs); *United States v. Zoukis*, 1:07-cr-

00091-MR, 2022 WL 451357, at *4 (W.D.N.C. Feb. 14, 2022) (declining to terminate six-year term of supervised release due to the serious nature of defendant's offenses and the need to protect the public, even though the court was "impressed with the Defendant's adherence to the conditions of supervised release, his productivity post-incarceration, his engagement in sex offender therapy, and his overall commitment to successfully reintegrating back into society"). Additionally, maintaining Petitioner's lifetime term of supervised release would not create an unwarranted sentence disparity because, consistent with the Sentencing Commission's policy statement, child sex offenders are often sentenced to lifetime supervised release following prison. *See, e.g., Helton,* 782 F.3d at 150; *United States v. Stevens,* No. MJG-12-0136, 2018 WL 835717, at *2 (D. Md. Feb. 13, 2018).[4]

Finally, the Court is not persuaded by Petitioner's argument that transfer of supervision to the Western District of Virginia is less "desirable" than terminating supervised release altogether. Pet'r's Mot. at 4 n.2. The United States Probation Office has not recommended that Petitioner's supervised release be terminated. *Cf. Stevens,* 2018 WL 835717, at *2 (denying termination of supervised release and suggesting defendant work with the Probation Office to obtain a recommendation for termination after the five-year mandatory minimum supervised release term). The fact that the Probation Office in the Western District of Virginia may or may not require further mental health or sex offender treatment does not demonstrate that supervised release is unnecessary, but instead indicates that supervised release is flexible and may "provide [Petitioner] with needed . . . correctional treatment" throughout his lifetime term. § 3553(a)(2)(D). The Probation Office will still supervise and enforce the other important conditions of Petitioner's supervised release, including the restrictions on computer use and associating with minors. While

---

[4] Restitution is not at issue because there is no identifiable victim in this case. PSR ¶¶ 53, 109; Resp. Opp'n at 7.

the Court will not terminate supervised release, it would entertain a request to permanently transfer supervision to the Western District of Virginia to allow Petitioner to move to Martinsville, Virginia.

## IV.   CONCLUSION

Having considered the § 3553(a) factors, Petitioner's conduct, and the interests of justice, the Court finds that early termination of Petitioner's term of supervised release is not warranted. 18 U.S.C. § 3583(e)(1). Therefore, Petitioner's Second Amended Motion for Early Termination of Supervised Release, ECF No. 9, is **DENIED**. The Court will support a transfer to the Western District of Virginia.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, and the United States Probation Office.

**IT IS SO ORDERED.**

Norfolk, Virginia
December 7/, 2023

Raymond A. Jackson
**United States District Judge**